**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| KOHL HARRINGTON, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 20-2671 (RC) |
| | : | | |
| v. | : | Re Document No.: | 25 |
| | : | | |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### DENYING PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

## I. INTRODUCTION

Plaintiff Kohl Harrington filed this Freedom of Information Act ("FOIA") case in September 2020. Between May and July 2020, Harrington filed ten FOIA requests, seeking records from the U.S. Department of Health and Human Services ("HHS") regarding appeals logged by the Food and Drug Administration ("FDA") and HHS emails mentioning Harrington's name. Following a series of document releases by the agency, the parties agreed in January of this year that HHS had produced all responsive records and no issues remained other than the award of attorney's fees. On August 30, 2022, Harrington filed a motion for attorney's fees. For the reasons set forth below, the Court denies this motion.

## II. FACTUAL BACKGROUND

Between May 3, 2020, and July 11, 2020, Harrington submitted ten FOIA requests to HHS regarding two categories of information: (1) email records for various HHS employees "pertaining to the key term: Kohl Harrington" and (2) all FDA appeals logged by HHS from January 1, 2020, to July 11, 2020. *See* Compl. at 2–6, ECF No. 1. For ease of reference, the

Court refers to these requests by three groupings: (1) Group A - May 3, 2020 requests, (2) Group B - July 6, 2020 requests, and (3) Group C - July 11, 2020 request.

### A. Group A - May 3, 2020 Requests

On May 3, 2020, Harrington submitted three FOIA requests targeting email records for HHS employees Kim Hutchinson (Executive Chief FOIA Officer), Michael Marquis (FOIA Director), and Brandon Gaylord (GDM FOIA Liaison, Director). Compl. ¶¶ 6–8; Def.'s Mem. Opp'n Pl.'s Mot. Atty's Fees and Costs ("Def.'s Opp'n") at 2, ECF No. 26. For each employee, Harrington sought email records from September 1, 2019, to December 31, 2019, "pertaining to the key term: Kohl Harrington." Compl. ¶¶ 6–8.

On May 5, 2020, HHS informed Harrington that it had aggregated the three requests and assigned a reference number (2020-01125-FOIA-OS) to the matter. Compl. ¶ 9. After multiple requests from Harrington for a status update, HHS informed Harrington on June 29, 2020 that records had been "returned back" to the FOIA office and were "awaiting analyst review." *Id.* ¶¶ 10–11. On July 28, 2020, HHS provided an update that its review would require "at least 18 months." *Id.* ¶ 13. HHS avers that Harrington's May 3, 2020 requests originally returned over 80,000 pages of records, Declaration of Alesia Williams ¶ 27 ("Williams Decl."), ECF. No. 26-1; Attachment 5 to Williams Decl., but the yield was eventually "narrowed to approximately 25,000 pages of potentially responsive records," Williams Decl. ¶ 27.

### B. Group B - July 6, 2020 Requests

On July 6, 2020, Harrington submitted six FOIA requests targeting email records for HHS employees Kim Hutchinson, Michael Marquis, Brandon Gaylord, Natasha Taylor (Government Specialist), Brandon Lancey (Government Specialist), and Greg Montross (Senior Government Information Specialist Team Lead). Compl. ¶¶ 16, 21, 27–30; Def.'s Opp'n at 4.

For each employee, Harrington sought email records from January 1, 2020 to July 6, 2020 "pertaining to the key term: Kohl Harrington." *Id.*

On August 7, 2020, HHS informed Harrington that it had aggregated the Taylor, Lancey, Montross, and Hutchinson requests and assigned a reference number to the matter, Compl. ¶ 31; the remaining matter retained the Group B Hutchinson reference number, 2020-01475-FOIA-OS, *see* Williams Decl. ¶ 56. On September 8, 2020, Harrington asked for an estimated completion date for his Group B Gaylord (reference number 2020-01473-FOIA-OS), Marquis (2020-01474-FOIA-OS), and Hutchinson (2020-01475-FOIA-OS) requests, as well as for his Group C request (2020-01485-FOIA-OS). Williams Decl. ¶ 61; Attachment 6 to Williams Decl. HHS claims that it informed Harrington on September 10, 2020 that the estimated completion date for the July 6, 2020 requests would be "18-20 months from now, due to the large volume of records found within the email search."[1] Ex. 18 to Compl.; Compl. ¶ 33; Williams Decl. ¶ 62.

**C. Group C - July 11, 2020 Request**

On July 11, 2020, Harrington submitted one FOIA request for "applicable document[s] showing all FDA appeals logged by HHS" from January 1, 2020 to July 11, 2020. Compl. ¶ 35. While Harrington claims he did not receive an estimated completion date for this request, *id.* ¶ 37, HHS claims that it provided an estimated completion date of 18-20 months on September 10,

---

[1] HHS avers that its September 10, 2020 email response provided an estimated completion date for all of Harrington's July 6, 2020 requests, in addition to Harrington's July 11, 2020 request. Williams Decl. ¶¶ 62–63. But Harrington claims he did not receive an estimated completion date for the July 6, 2020 Marquis and Gaylord requests or for the July 11, 2020 request. Compl. ¶¶ 18, 24, 39. The Court notes that the difference between the parties' representations may arise from the fact that the agency's email update of September 10, 2020—though presumably sent in response to Harrington's September 8, 2020 inquiry about the various Group B and C requests—has a subject line of "2020-01475-FOIA-OS," suggesting that the update applied only to the Group B Hutchinson request and not the Group B Gaylord and Marquis requests or the Group C request. *See* Ex. 18 to Compl.

2020 for the July 6, 2020 requests as well as the July 11, 2020 request, Def.'s Opp'n at 6; Williams Decl. ¶ 62.

**D. Harrington Complaint and HHS Releases**

Harrington filed his complaint in the instant matter on September 21, 2020, arguing that HHS had failed to comply with FOIA and requesting that the Court order HHS to "conduct a reasonable search for records and to produce the requested records promptly." Compl. at 7. Between December 11, 2020 and November 22, 2021, HHS made twelve separate releases to Harrington. Def.'s Opp'n at 7; Williams Decl. ¶ 66. HHS completed all processing and releases within "14 months from the estimate it had provided in September 2020 and 16 months from the estimate provided in July 2020." Def.'s Opp'n at 7. Harrington did not dispute any withholdings made by HHS. *Id.*; Williams Decl. ¶¶ 66, 68–78. In a January 2022 joint status report, HHS stated that it had produced all responsive records and Harrington stated that he had completed his review and that no issues remained other than the award of attorney's fees. Joint Status Report (Jan. 24, 2022) ¶¶ 4–5, ECF No. 18.

On August 30, 2022, Harrington filed his motion for attorney's fees seeking $6,417.80, "plus fees for the preparation of Plaintiff's reply in support of [the] petition." Pl.'s Pet. Atty's Fees and Costs at 5 ("Pl.'s Mot."), ECF No. 25. Following Defendant's opposition to his motion, Harrington filed a reply requesting that the Court award Plaintiff attorney's fees and costs of $6,361.10, plus $1,049.60 in fees incurred in responding to Defendant's opposition. Pl.'s Fee Petition Reply ("Pl.'s Reply") at 1, ECF No. 27.

**III. LEGAL STANDARD**

FOIA allows a court to "assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has

substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). To "substantially prevail," a party must first establish *eligibility* for fees by showing that it obtained relief either through (1) "a judicial order, or an enforceable written agreement or consent decree," § 552(a)(4)(E)(ii)(I), or (2) by causing a "voluntary or unilateral change in the position by the agency, if the complainant's claim is not insubstantial," § 552(a)(4)(E)(ii)(II).

Plaintiffs seeking to establish eligibility under the second prong above proceed under the "catalyst theory." *Grand Canyon Trust v. Bernhardt*, 947 F.3d 94, 95 (D.C. Cir. 2020) (quoting *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011)). Under this doctrine, a plaintiff "substantially prevails" when he "substantially cause[s] the government to release the requested documents before final judgment."[2] *Brayton*, 641 F.3d at 524. "[T]he key question under the 'catalyst theory' is whether the 'institution and prosecution of the litigation cause[d] the agency to release the documents obtained during the pendency of the litigation[.]'" *Calypso Cargo Ltd. v. U.S. Coast Guard*, 850 F. Supp. 2d 1, 4 (D.D.C. 2011) (quoting *Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 587 (D.C. Cir. 1981)). That is, "a FOIA plaintiff must 'prove that prosecution of the action could reasonably be regarded as necessary to obtain the information and that a causal nexus exists between the action and the agency's surrender of that information.'" *Short v. U.S. Army Corps of Engineers*, 613 F. Supp. 2d 103, 106 (D.D.C. 2009) (quoting *Judicial Watch Inc. v. Bureau of Land Mgmt.*, 562 F. Supp. 2d 159, 173 (D.D.C. 2008)). But "[s]omething more than '*post hoc, ergo propter hoc* must be

[2] The catalyst theory was used by the D.C. Circuit until 2001, when the Supreme Court held that the catalyst theory "is not a permissible basis for the award of attorney's fees." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 610 (2001). Congress responded by reinstating the catalyst theory for FOIA cases in the OPEN Government Act of 2007. *See Davis v. U.S. Dep't of Justice*, 610 F.3d 750, 752 (D.C. Cir. 2010). "The purpose and effect of this law, which remains in effect today, was to change the 'eligibility' prong back to its pre-*Buckhannon* form." *Brayton*, 641 F.3d at 525.

shown.'" *Calypso Cargo*, 850 F. Supp. 2d at 4 (quoting *Public Law Educ. Inst. v. Dep't of Justice*, 744 F.2d 181, 183 (D.C. Cir. 1984)). "If, rather than the threat of an adverse court order, 'an unavoidable delay accompanied by due diligence in the administrative process was the actual reason for the agency's failure to respond to a request, then it cannot be said that the complainant substantially prevailed in [its] suit.'" *Id.* (quoting *Church of Scientology*, 653 F.2d at 588).

If the court determines that a plaintiff is eligible for fees, it must then determine whether a plaintiff is "entitled" to fees. *Calypso Cargo*, 850 F. Supp. 2d at 3 (citation omitted). In making that determination, courts consider four factors: "(1) the benefit of the release to the public; (2) the commercial benefit of the release to the plaintiff; (3) the nature of the plaintiff's interest; and (4) the reasonableness of the agency's withholding." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1498 (D.C. Cir. 1984).

## IV. ANALYSIS

Harrington argues that he is eligible for attorney's fees under the catalyst theory.[3] *See* Pl.'s Mot. at 2–3. Specifically, he contends that before he filed suit, "[HHS] issued no determinations, produced no records, and either ignored Plaintiff's requests for estimated completion dates, or provided estimated dates for searches alone that were substantially longer

[3] Harrington does not assert that he has "substantially prevailed" through a "judicial order, or an enforceable written agreement or consent decree." 5 U.S.C. § 552(a)(4)(E)(ii)(I). But even if Harrington were to pursue this argument, "[p]rong one, as is evident in its text, requires a plaintiff to be 'awarded some relief by a court, either in a judgment on the merits or in a court-ordered consent-decree.'" *WP Co. LLC v. U.S. Dep't of State*, 506 F.Supp.3d 11, 15 (D.D.C. 2020) (quoting *Oil, Chemical and Atomic Workers Int'l Union, AFL-CIO v. Dep't of Energy (OCAW)*, 288 F.3d 452, 456–57 (D.C. Cir. 2002)). The Court notes that it did not grant any such relief here. The Court only ordered the parties to submit status reports and to confer and submit a proposed briefing schedule; such orders do not satisfy prong one. *See WP Co.*, 506 F.Supp.3d at 15 ("An order that is 'procedural — [e.g.,] conduct a search — as opposed to substantive — [e.g.,] produce documents'— does not qualify.") (quoting *Davy v. CIA*, 456 F.3d 162, 165 (D.C. Cir. 2006)).

than the dates by which [HHS] completed processing for all of the requests at issue in this case." Pl.'s Mot. at 3. Thus, Harrington implies that "the institution and prosecution of the litigation" caused HHS to release the requested records. *Calypso Cargo*, 850 F. Supp. 2d at 4 (citation omitted).

In response, HHS argues that the "lawsuit did not cause the release of the documents." Def.'s Opp'n at 10. According to HHS, the releases "would have occurred without the lawsuit because . . . [HHS] had already completed substantive steps prior to the lawsuit, including identifying the number of potentially responsive pages." *Id.* HHS states that any delays in responding to or releasing documents responsive to Harrington's requests resulted from "the sheer volume of records" returned and "a very large FOIA backlog, to which Plaintiff contributed with his numerous requests." *Id.* at 10–11. For these reasons, HHS argues, Harrington is ineligible for attorney's fees. *Id.* at 10. HHS further contends that, even if Harrington were eligible for attorney's fees, he is not entitled to such fees because, among other reasons: (1) the release of records sought by Harrington—which relate primarily to the processing of his own FOIA requests—did not yield any discernible public benefit, and (2) Harrington sought these records for his own commercial benefit. *Id.* at 11–13. The agency furthers adds that the amount sought in attorney's fees is unreasonable. *Id.* at 15–16.

The Court agrees with HHS that, as a threshold matter, Harrington has not proved his eligibility for attorney's fees. The catalyst theory turns on whether a plaintiff's lawsuit "substantially caused" the agency to release documents. *Brayton*, 641 F.3d at 524. "[T]he plaintiff has the burden of showing that it is more probable than not that the government would not have performed the desired act absent the lawsuit." *Bernhardt*, 947 F.3d at 97 (internal quotation omitted). "[T]he mere filing of the complaint and the subsequent release of the

document is insufficient to establish causation." *Calypso Cargo*, 850 F. Supp. 2d at 4 (quoting *Weisberg*, 745 F.2d at 1496)*; see also Pub. Law Educ. Inst. v. U.S. Dep't of Justice*, 744 F.2d 181, 184 n.5 (D.C. Cir. 1984) ("While the temporal relation between an FOIA action and the release of documents may be taken into account in determining the existence *vel non* of a causal nexus, timing, in itself or in conjunction with any other particular factor, does not establish causation as a matter of law.").

Harrington has not met his burden to show that his lawsuit substantially caused HHS to release documents, as "there is no reason to think" that HHS would not have released the documents absent Harrington's suit. *WP Co. LLC*, 506 F.Supp.3d at 16. Indeed, Harrington's own complaint acknowledges that HHS started processing his requests before he filed suit. HHS responded to Harrington's Group A requests by (1) aggregating the requests and assigning a reference number, (2) informing Harrington that the records were located and "awaiting analyst review," (3) providing Harrington with an estimated completion date of "at least 18 months," and (4) providing Harrington with the number of pages returned. *See* Compl. ¶¶ 9, 11, 13, 14. Similarly, HHS responded to Harrington's Group B and C requests by aggregating the requests and assigning a reference number. *See* Compl. ¶¶ 17, 22, 31, 36. HHS then provided Harrington with an estimated completion date of "18-20 months" for at least one of the Group B requests. Attachment 7 to Williams Decl.

HHS has also submitted an affidavit averring that the agency started processing Harrington's requests before he filed suit. The affidavit, which must be "accorded a presumption of good faith" by this Court, provides additional details about the specific steps that HHS took in response to Harrington's requests prior to his complaint. *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). On the same day HHS received the Group A requests, "OS-

FOIA asked [the Office of the Chief information Officer ("OCIO")] to search the 'Outlook Read Access to Mailbox,' and 'Archive PST' of Kim Hutchinson, Michael Marquis, and Brandon Gaylord for potentially responsive records using the search term: 'Kohl Harrington.'" Williams Decl. ¶ 26. On July 30, 2020, following receipt of the Group B requests filed on July 6, 2020, OS-FOIA tasked OCIO with the same search for the Group B individuals. *Id.* ¶ 55. And on July 13, 2020, following receipt of the Group C request, OS-FOIA "searched its internal database for appeals log for the period between January 1, 2020 through July 6, 2020." *Id.* ¶ 60. In short, by the time Harrington filed his complaint, the agency had already begun processing his requests. And by the end of the agency's releases, Harrington had not challenged any withholdings by the agency. *See id.* ¶¶ 66–78; see also *WP Co. LLC*, 506 F. Supp. 3d at 17. Taking these facts together, the Court is not persuaded that Harrington's lawsuit "substantially caused" HHS to release the requested records. *Brayton*, 641 F.3d at 524.

Nonetheless, Harrington maintains that a FOIA requester is still eligible for fees "where the lawsuit results in an 'acceleration' in processing." Pl.'s Mot. at 3 (citing *Terris, Pravlik & Millian, LLP v. Ctrs. For Medicare & Medicaid Servs.*, 794 F. Supp. 2d 29, 38 (D.D.C. 2011)). He argues that HHS provided estimated completion dates that were "substantially longer than the dates by which Defendant completed processing for all of the requests at issue in this case," implying that his lawsuit caused HHS to accelerate its timeline. *Id.*

While it is true that "[s]udden acceleration . . . might, in a given case, lead a court to conclude that . . . the filing of the lawsuit was the real reason for that acceleration," it is also true that "if the government's assertion for any delay is the slowness of the FOIA process despite its due diligence, disclosure after the lawsuit is filed, even if long delayed, will not in itself justify the award of fees." *Terris*, 794 F. Supp. 2d at 38. "To determine if extrinsic factors, rather than

the plaintiff's lawsuit, caused the agency's release of documents," courts consider "(1) whether the agency made a good faith effort to search out material and pass on whether it should be disclosed; (2) whether the scope of request caused delay in disclosure; and (3) whether the agency was burdened with other duties that delayed its response." *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 41 (D.D.C. 2016) (cleaned up and citation omitted).

First, as indicated above, HHS made a "good faith effort" to search for the records requested by Harrington. *Id.* Shortly after receiving Harrington's requests, HHS tasked its FOIA office to identify responsive records; HHS also furnished Harrington with estimated completion dates. Contrary to Harrington's assertion that these dates were "substantially longer than the dates by which Defendant completed processing," HHS completed all processing by November 22, 2021—"approximately 14 months after the estimate[] given in September 2020," just "a few months faster than the original estimate." Williams Decl. ¶ 65. To the extent HHS did accelerate its processing timeline, that acceleration was, according to the agency, the result of Harrington "agree[ing] to exclude from the scope of the Group A and Group B requests" a number of non-responsive and duplicative records. *See* Williams Decl. ¶ 65; *see also, e.g.*, Joint Status Report (Feb. 26, 2021) at 3, ECF No. 12 (stating that Harrington agreed that the agency could treat the OS FOIA office's internal tracker spreadsheet as non-responsive).

Plaintiff may take issue with the agency's contention that its September 8, 2020 email provided an estimated completion date for the Group B Gaylord and Marquis requests and the Group C request, in addition to the Group B Hutchinson request. *See* Pl.'s Reply at 1. Plaintiff might contend, for instance, that because the update on its face provided only an estimated timeline for the Group B Hutchinson request, the Court should not accept the agency's statement that it provided Harrington with an update for the other three pending requests and should

instead infer "that the agency forgot about, or sought to ignore," those requests such that "an award of costs and fees would be appropriate." *Harvey v. Lynch*, 178 F. Supp. 3d 5, 8 (D.D.C. 2016) (denying award of attorney's fees in case where agency had not provided any responsive records by time of filing 67 business days after FOIA request), *aff'd sub nom. Harvey v. Sessions*, No. 16-5200, 2017 WL 4220323 (D.C. Cir. July 14, 2017). But an agency's failure to inform a plaintiff of an estimated completion date does not necessarily make the plaintiff eligible for fees. *See Grand Canyon Tr. v. Zinke*, 311 F. Supp. 3d 381, 390 (D.D.C. 2018) (rejecting plaintiff's argument for attorney's fees that was based in part on agency's failure to provide estimated completion date), *aff'd sub nom. Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94 (D.C. Cir. 2020). Only about a month had passed between Harrington's last FOIA request and his complaint. Such a delay "is not of the length that would ordinarily permit the Court to infer that [the agency] was prompted to action by" Harrington's suit. *Harvey*, 178 F. Supp. 3d at 8. As another court in this district has recognized, "a strict-liability rule for agencies that miss the 20-day FOIA deadline" would be, given the number and time-consuming nature of FOIA cases pending at federal agencies, "both unnecessarily harsh and potentially quite expensive." *Id.* Furthermore, the agency "eventually provided 'a detailed timeline of events leading up to the disclosure of information' that largely, if not completely, refutes any claim that [a sufficiently long delay] happened here." *Id.* (quoting *Bigwood v. Def. Intelligence Agency*, 770 F. Supp. 2d 315, 321 (D.D.C. 2011)).

Second, the scope of Harrington's request clearly caused a "delay in disclosure." *Elec. Priv. Info. Ctr.*, 218 F. Supp. 3d at 41 (citation omitted). After completing searches for responsive records, HHS "identified an initial yield of 83,893 pages for Group A, [and] 42,308 pages for Group B." Williams Decl. ¶ 80. The agency has also explained that its review at least

as to the Group A requests was complicated by the fact that the requests sought emails of "current or former leadership within OS-FOIA," which "not only limited the number of people who were available to work these requests, but also created supervisory issues that disrupted the normal course of business." Williams Decl. ¶ 25. The Court finds that HHS has made a convincing argument that "the sheer volume of records that had to be processed was the dispositive issue related to the timing of the releases." Def.'s Opp'n at 10.

Third, HHS has established that it was "burdened with other duties" that contributed to delays. *Elec. Priv. Info. Ctr.*, 218 F. Supp. 3d at 41 (citation omitted). Specifically, HHS asserts that, by the end of fiscal year 2021, the HHS FOIA office "had a backlog of 2,425 requests." Williams Decl. ¶¶ 64, 84. A significant backlog of FOIA requests may justify an agency's delay in producing responsive records. *See, e.g., Codrea v. ATF*, 272 F. Supp. 3d 49, 54 (D.D.C. 2017) ("ATF has sufficiently described administrative issues due to backlogs that 'delaye[d] . . . beginning work on plaintiffs' FOIA request.'" (citation omitted)).

In sum, Harrington has not shown that his lawsuit substantially caused HHS to release records. HHS began processing Harrington's requests before he filed his complaint, and any delays by HHS were fairly attributable to the scope of Harrington's requests and a substantial backlog of other FOIA requests. Because Harrington is not eligible for fees, the Court does not address whether he is entitled to fees. *See, e.g., Calypso Cargo*, 850 F. Supp. 2d at 6 (addressing only the question of eligibility); *Bigwood*, 770 F. Supp. at 321 (same). Accordingly, the Court denies Harrington's motion for attorney's fees.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion for attorney's fees is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: December 9, 2022

RUDOLPH CONTRERAS
United States District Judge